**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for Debtor and Debtor-in-Possession*
1350 Broadway, 11th Floor
New York, NY 10018
David H. Wander, Esq. (dwander@tarterkrinsky.com)
Scott Markowitz, Esq. (smarkowitz@tarterkrinsky.com)
Alexander R. Tiktin, Esq. (atiktin@tarterkrinsky.com)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

                                                               Chapter 11

100 ORCHARD ST. LLC
D/B/A BLUE MOON HOTEL,                        Case No. 22-10358 (DSJ)

                          Debtor.
-------------------------------------------------------------X

### DECLARATION OF RANDY SETTENBRINO PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 AND 9077-1 IN SUPPORT OF A HEARING ON SHORTENED NOTICE ON THE DEBTOR'S FIRST DAY MOTION

**RANDY SETTENBRINO,** under penalty of perjury, hereby declares and states as follows:

1. I am the managing member of 100 Orchard St. LLC d/b/a Blue Moon Hotel, the chapter 11 debtor (the "Debtor").

2. I submit this declaration (this "Declaration") to provide an overview of the Debtor, and to provide required information in support of the Debtor's first-day motion (the "First Day Motion"), pursuant to Local Bankruptcy Rule 1007-2 and 9077-1.

3. The facts and statements set forth in this Declaration are based upon my personal knowledge of the Debtor's business and financial affairs, my review of the Debtor's books and records, and my opinions. If called upon to testify, I could and would testify competently to the statements set forth in this Declaration, as the information in this Declaration is accurate to the best of my knowledge.

4. I am the Debtor's managing member. I have been involved with the Debtor's business for approximately 20 years.

5. The Debtor operates a 22-room boutique hotel known as the Blue Moon Hotel (the "Hotel"), in the lower east side of Manhattan, at 100 Orchard Street.

## I.  HISTORY OF THE BLUE MOON HOTEL

6. The building where the Hotel is located was built in 1879 by architect Julius Boekel. The building is comprised of two parcels and I purchased one of them in 1997 and the other in 2001. Beginning in or about 2002, I redesigned the five-story tenement and restored the building to function as a stately eight-story hotel. It was a five-year art preservation and design project which received many awards, including one from National Geographic. The Hotel has been recognized by the Historic Districts Council as a historic site, and has received significant press attention in over 50 major articles. The Hotel has been instrumental in revitalizing commerce south of Delancey Street and has been extensively involved in community service.

*The Idi Lease*

7. In May 2015, because of my personal family situation, with six young children and a mother who became terminally ill, I agreed to lease the Hotel to Eli Idi ("Idi"), who I believed to be a reputable businessman. It was a huge mistake. I entered into a lease agreement with Idi personally (the "Lease"). He converted the Hotel into a hostel and ran it under his company, Blue Moon Hotel NYC Inc. Idi fell behind in paying the real estate taxes and rent, and the building began falling into a state of extensive disrepair. The Debtor commenced a proceeding in landlord-tenant court and, pursuant to a stipulation of settlement, Idi agreed to pay the back taxes, rent arrears and legal fees. Idi subsequently defaulted on the stipulation and vacated the building and

his other hostels in March of 2020 as a result of the pandemic. Idi now owes the Debtor in excess of $3.3 million in unpaid real estate taxes, rent arrears and legal fees.

8.  On June 3, 2020, Idi filed a complaint against me and the Debtor in state court, and he filed a notice of pendency against the building, claiming that he had an enforceable option to buy the Hotel for $18 million with a $2 million credit to cover his alleged investment in the property. While this action has no merit, the filing of the complaint with the *lis pendens* made it impossible for the Debtor to obtain new financing or to sell the property.

### *Rehabilitation of the Hotel*

9.  After the premises were vacated by Idi and his subtenant, I reclaimed the building in a state of extreme disrepair: the elevator was hanging off the brackets, the HVAC and fire suppression system needed overhaul; the envelope of the building from the roof to the walls all had water penetration; the commercial kitchen floor was on the verge of collapse; and the building required immeasurable finishing recovery. I worked with my family and community volunteers for over a year to return the Hotel to its former splendor.

### *Pandemic Shuts Down Hotel*

10. The COVID-19 pandemic shut down the Debtor's business from March of 2020 until September of 2021.

### *Negotiations with Potential Lessee*

11. With the Hotel shut down due to the pandemic, I entered into negotiations with Reverend Que English, a principal of Not On My Watch ("NOMW"), a city-backed non-profit organization which provides housing for the homeless, to operate a city-backed homeless shelter at the Hotel, with the support of the New York City Department of Homeless Services ("DHS"). On or about April 14, 2020, NOMW signed a letter of intent to lease the property for an initial

3

annual rent of $1,020,000; later on via extensive negotiations it was increased by DHS to $1,199,820. I worked countless hours to prepare the building to meet their specific requirements and make adjustments for any and all city restrictions. Exhaustive and considerable efforts were applied to finalize the lease. However, actions by the Debtor's lender sabotaged these efforts.

### *Brick Moon Capital LLC's ("Brick") Illegal Foreclosure Action*

12. On May 8, 2020, Governor Cuomo announced Executive Order 202.28, which, *inter alia*, prohibited the initiation of a proceeding for a foreclosure of any commercial mortgage for nonpayment. On August 21, 2020, Governor Cuomo announced Executive Order 202.57, which extended the moratorium on commercial foreclosures until September 20, 2020.

13. On September 9, 2020, Brick filed an action to foreclose on the Property, in clear and direct violation of the moratorium on foreclosure actions (NY Sup. Ct., Case No. 850125/2020, the "First Foreclosure"). In addition, Brick contacted NOMW and DHS and notified them of the First Foreclosure. Brick also interjected themselves in the Debtor's lease negotiations with NOMW and DHS and, as a result of Brick's interference and onerous terms, the potential transaction was aborted.

### *Jurny Management Agreement*

14. On or about April 22, 2021, the Debtor entered into a one-year agreement with Jurny Inc. ("Jurny"), a hotel services company. Jurny agreed to provide $250,000 to furnish the Hotel (the "Set Up Costs"), and to provide online booking, for which Jurny is entitled to receive a management fee of 10% of all gross revenues; additionally, 50% of the Hotel's net income is applied to recoup the Set Up Costs.

*Program with Jewish Community Center of Greater Coney Island*

15. The Hotel entered into a collaboration agreement with the Jewish Community Center of Coney Island ("JCC") to intern disadvantaged youth in the hotel business. The Hotel is currently training approximately fifteen (15) young people in hotel operations, who provide employee related services.

*Agreement with the City for Payment of Property Taxes*

16. In March of 2022, the Debtor entered an agreement with the City of New York for payment of $397,102.01 in property taxes, on two separate tax lots. The Debtor is required to make 24 installment payments of a combined $18,623.42 each, with the first installment payments due on April 1, 2022. The Debtor is also required to remain current on real estate taxes.

*Brick's Second Foreclosure and Appointment of a Receiver*

17. As soon as the stay on foreclosure actions was lifted, Brick filed a verified complaint with the Supreme Court of the State of New York, County of New York, Index No. 850010/2022, on January 18, 2022, along with an *ex parte* motion for the immediate appointment of a receiver (the "Brick Lawsuit"). On March 3, 2022, the state court granted Brick's motion and appointed Roberta Ashkin, Esq. as temporary receiver of the Hotel (the "Receiver").

II. **SECURED AND UNSECURED DEBT**

*Brick Secured Debt*

18. On or about June 26, 2017, the Debtor, as borrower, entered into a Consolidated Security Agreement with Brick, as lender, for a Note in the principal amount of $10,000,000. The Debtor gave Brick a first position mortgage on the Debtor real property consisting of the building at 100 Orchard Street, New York, NY (the "Property"). Brick also received a lien on all rents and other income from the Hotel, along with a lien on other property of the Debtor. In addition, the

Note was secured by my guaranty dated June 26, 2017. The maturity date of the Note was extended twice, pursuant to a Modification and Extension Agreement dated as of July 1, 2019, and a Modification and Extension Agreement dated as of October 1, 2019, to July 1, 2020. The Debtor was required to pay a $25,000 fee, plus Brick's attorneys' fees for each extension.

19. Prior to the maturity date of the Brick loan, the COVID-19 pandemic shut down the Debtor's business, in or about March 2020, and precluded any hope of refinancing the Brick mortgage at that time. During the height of the pandemic, Brick refused my requests for forbearance or discount, and had a $405,000 security deposit from the former tenant applied to their monthly interest payments, along with $75,000 in escrow for the Debtor's real estate taxes. Brick also demanded that I replenish the escrow account after they received the $480,000 in interest payments during the pandemic.

*EIDL*

20. On October 27, 2020, the Debtor received an original Economic Injury Disaster Loan in the amount of $150,000, and on July 15, 2021, the Debtor received a modification, increasing the principal balance to $500,000, with interest accruing at 3.75% per annum (the "EIDL"). The EIDL is secured by all of the Debtor's property, including a second position mortgage on the Property. In addition, the EIDL is secured by my guaranty dated July 11, 2021. The maturity date of the EIDL is October 25, 2050 and the Debtor is required to remit monthly payments of $3,268.

*Taxes*

21. As set forth above, the Debtor owes the City of New York approximately $397,000 for unpaid real estate taxes.

6

*Unsecured Debts*

22. The Debtor owes Jurny approximately $108,000 in Set Up Costs. In addition, the Debtor owes various vendors, utilities, and other creditors a total of approximately $55,000.

### III. EQUITY INTERESTS

23. I own 100% of the membership interests in the Debtor.

### IV. PLAN OF REORGANIZATION

24. The Debtor intends to file a plan of reorganization extending and modifying the Brick mortgage. The Debtor expects the Hotel revenues to significantly increase as the pandemic subsides and tourism increases. With the government mandated mask requirements ending, we have already seen an increase in bookings for the Hotel.

25. The Debtor's management will continue to implement cost saving measures and promote and strengthen the brand that they worked so arduously to create take action to improve occupancy and revenues and the Debtor's overall profitability.

26. The Debtor's core business is fundamentally sound and is improving every month.

27. The needs and interests of the Debtor's creditors and equity holders will best be served by the Debtor's continued possession of its property and management of its business as a debtor-in-possession under chapter 11.

### V. INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2

*Local Rule 1007-2(a)(1)*

28. The Debtor operates a 22-room boutique hotel in the Lower East Side, known as the Blue Moon Hotel. The Chapter 11 filing was precipitated by the appointment of the Receiver in connection with the Brick Lawsuit.

*Local Rule 1007-2(a)(2)*

29. This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

*Local Rule 1007-2(a)(3)*

30. No committee was organized prior to the order for relief in this chapter 11 case.

*Local Rule 1007-2(a)(4)*

31. A list of the names and addresses of the Debtor's twenty (20) largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in §101(31) of the Bankruptcy Code, is filed with the Petition.

*Local Rule 1007-2(a)(5)*

32. All secured claims are listed on Schedule D of the bankruptcy schedules. The principal amount of the first mortgage is $10 million.

*Local Rule 1007-2(a)(6)*

33. A summary of the Debtor's consolidated assets and liabilities is annexed hereto as **Exhibit "A**."

*Local Rule 1007-2(a)(7)*

34. There are no publicly held securities of the Debtor.

*Local Rule 1007-2(a)(8)*

35. None of the Debtor's property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity, except the Receiver was recently appointed in the Brick Lawsuit.

*Local Rule 1007-2(a)(9)*

36. The Debtor owns the Hotel.

*Local Rule 1007-2(a)(10)*

37. The Debtor's substantial assets consist of the Hotel.

38. The Debtor's books and records are located at my home at 18 Rosemawr Place, Clifton, NJ 07012.

39. The Debtor does not hold any assets outside the territorial limits of the United States.

*Local Rule 1007-2(a)(11)*

40. The Debtor is a defendant in two pending lawsuits. As noted above, Brick filed the Brick Lawsuit.

41. Idi and Blue Moon Hotel NYC Inc. filed an action in the Supreme Court of the State of New York, County of New York, Index No. 153538/2020, alleging three causes of action: (i) declaratory relief; (ii) breach of contract; and (iii) attorney's fees.

*Local Rule 1007-2(a)(12)*

42. The Debtor has been managed since its inception in March of 2002 by Randy Settenbrino - Chief Executive Officer and Shaina Settenbrino – Controller. Mr. Settenbrino manages all aspects of the business, and Mrs. Settenbrino manages all aspects of the Debtor's finances.

*Local Rule 1007-2(b)(1) and (2)*

43. The Debtor is managed by an affiliate, Blue Moon Hotel Ltd. (the "Management Entity").

44. The Management Entity's estimated gross weekly payroll and payments to officers and insiders for the thirty (30) day period following the Chapter 11 petition is $7,750.

*Local Rule 1007-2(b)(3)*

45. A schedule, for the 30-day period following the filing of the chapter 11 petition, of estimated cash receipts and disbursements, other than professional fees is annexed as **Exhibit "B."**

VI.     **SUMMARY OF FIRST DAY MOTION**

*Motion to Use Cash Collateral (the "Cash Collateral Motion")*

46. As set forth above, prior to the Petition Date, the Debtor borrowed money on a secured basis from Brick as well as the SBA. Pursuant to the Cash Collateral Motion, the Debtor proposes to grant both Brick and the SBA replacement liens on post-petition room revenues in the same order and priority as their pre-petition liens.

47. I am advised the Bankruptcy Court must authorize the use of cash collateral unless the holder of an interest in such collateral consents to such use. The Debtor intends to try and negotiate for the consensual use of cash collateral with Brick and the SBA. Without the ability to utilize its cash generated from Hotel room revenues, the Debtor will not have the funds necessary to preserve its assets. Accordingly, without immediate access to its cash, the Debtor will likely suffer substantial and irreparable harm.

48. The Debtor is requesting a hearing as soon as possible, no later than March 28, 2022, to approve the use of cash collateral on an interim basis.

*Expedited Hearing*

49. I submit that the relief requested in the First Day Motion should be heard and determined on an expedited basis in order to allow the Debtor to continue its normal business

operations without any interruption, which interruption that could severally detriment the Debtor's ability to successfully reorganize.

## VII.    CONCLUSION

50.    Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      March 23, 2022

/s/ Randy Settenbrino
Randy Settenbrino

# EXHIBIT A

**Fill in this information to identify the case:**

Debtor name: **100 Orchard St. LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK

Case number (if known): _____

☐ Check if this is an amended filing

Official Form 206Sum
# Summary of Assets and Liabilities for Non-Individuals                                          12/15

## Part 1: Summary of Assets

1. **Schedule A/B: Assets-Real and Personal Property** (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B*.................................................................................................. $ **21,000,000.00**

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*................................................................................................ $ **4,341,713.23**

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B*.................................................................................................. $ **25,341,713.23**

## Part 2: Summary of Liabilities

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*.................................. $ **10,913,352.00**

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   **3a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*........................................................ $ **1,000.00**

   **3b. Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*............................... +$ **252,395.34**

4. **Total liabilities** ...........................................................................................................
   Lines 2 + 3a + 3b                                                                                                  $ **11,166,747.34**

# EXHIBIT B

**100 ORCHARD STREET LLC**
Case No. 22-
Budget - March 23-31, 2022

| Expenses | Amount ($) |
|---|---:|
| Travel Agent Commissions / Platform Fees | - |
| Merchant Fees | - |
| Management Fees | - |
| Advertising & Marketing | 400.00 |
| Telephone | 309.00 |
| Water | 1,035.00 |
| Sanitation | 232.00 |
| Internet / Connectivity / Cable TV | 1,192.00 |
| Non-Employee Compensation | 3,750.00 |
| Repairs & Maintenance | 500.00 |
| Supplies (Cleaning & Maintenance) | 300.00 |
| Supplies (Guest Rooms & Amenities) | 400.00 |
| Automobile | 150.00 |
| Other | 150.00 |
| **Total Expenses** | **8,418.00** |

**100 ORCHARD STREET LLC**
Case No. 22-
**Budget - April, 2022**

| Revenue | Amount ($) |
|---|---:|
| Room Revenue | 120,000 |
| Sales / Services | 20,000 |
| **Gross Revenue** | **140,000** |

| Expenses | |
|---|---:|
| Travel Agent Commissions / Platform Fees | 6,000 |
| Merchant Fees | 2,000 |
| Management Fees | 14,000 |
| Advertising & Marketing | 400 |
| Improvements | 3,000 |
| Telephone | 309 |
| Electricity & Gas | 5,000 |
| Water | 1,200 |
| Sanitation | 232 |
| Internet / Connectivity / Cable TV | 1,192 |
| Payroll (management) | 20,000 |
| Non-Employee Compensation | 7,600 |
| Elevator | 1,416 |
| Repairs & Maintenance | 1,700 |
| Supplies (Cleaning & Maintenance) | 3,030 |
| Supplies (Guest Rooms & Amenities) | 1,300 |
| Automobile | 350 |
| Inspections | 1,000 |
| Other | 450 |
| **Total Expenses** | **70,179** |

| | |
|---|---:|
| **Net Revenue** | **69,821** |