**TARTER KRINSKY & DROGIN LLP**
*Attorneys for 100 Orchard St. LLC d/b/a Blue Moon Hotel*
*Debtor and Debtor-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
David H. Wander, Esq.
Scott S. Markowitz, Esq.
Alexander Tiktin, Esq.
dwander@tarterkrinsky.com
smarkowitz@tarterkrinsky.com
atiktin@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

In re:                                                :

                                                      :    Chapter 11

100 ORCHARD ST. LLC                                   :

d/b/a BLUE MOON HOTEL,                                :    Case No.: 22-10358 (DSJ)

                                                      :

                                    Debtor.           :

-------------------------------------------------------- x

## DEBTOR'S PLAN OF REORGANIZATION

## TABLE OF CONTENTS

I INTRODUCTION ................................................................................................................1

II DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION ........................1

   A. Definitions ............................................................................................................1
   B. Interpretation, Rules of Construction, Computation of Time, and Choice of Law ...............9

III DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS ......................11

     Class 1 – NYC Secured Tax Claim ....................................................................11
     Class 2 – Brick Secured Claim ..........................................................................11
     Class 3 – SBA Secured Claim ...........................................................................11
     Class 4 - NYC Water Board Secured Claim ......................................................11
     Class 5 - Employee Wage Claim .......................................................................11
     Class 6 - Priority Tax Claims .............................................................................11
     Class 7 – General Unsecured Claims .................................................................11
     Class 8 – Equity Interests ..................................................................................12

IV TREATMENT OF CLASSES OF CLAIMS, EQUITY INTERESTS,  AND UNCLASSIFIED CLAIMS
   OR INTERESTS .............................................................................................................12

   A. Unclassified Claims ............................................................................................12

     1. United States Trustee Fees ...........................................................................12
     2. Administrative Claims .................................................................................12

     Class 1 -- NYC Secured Tax Claim ....................................................................13
     Class 2 – Brick Secured Claim ..........................................................................14
     Class 3 – SBA Secured Claim ...........................................................................15
     Class 4 - NYC Water Board Secured Claim ......................................................15
     Class 5 - Employee Wage Claim .......................................................................16
     Class 6 - Priority Tax Claims .............................................................................16
     Class 7 – General Unsecured Claims .................................................................16
     Class 8 – Equity Interests ..................................................................................17
     B. Controversy with Respect to Impairment .........................................................17

V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............17

   A. Treatment of Executory Contracts and Unexpired Leases .................................17

VI MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN.......................17

   A. Source of Payments ...........................................................................................17
   B. Transfer Taxes ..................................................................................................18
   C. Management of Reorganized Debtor ..................................................................18

VII CONDITIONS PRECEDENT TO THE OCCURRENCE OF THE EFFECTIVE DATE ........18

VIII OBJECTIONS TO CLAIMS AND PROCEDURES FOR RESOLVING AND TREATING CLAIMS..18

   A. Objections to Claims .........................................................................................18
   B. Resolution of Disputed Claims ..........................................................................19
   C. Estimation ........................................................................................................19
   D. Allowance of Disputed Claims ..........................................................................19

IX PROVISIONS CONCERNING CAUSES OF ACTION .................................................20

**X  PROVISIONS GOVERNING DISTRIBUTIONS** ............................................................**20**

    **A.  Disbursing Agent** ............................................................................20

    **B.  Unclaimed Distributions** ..............................................................20

    **C.  Professional Fees and Expenses** ..................................................21

    **D.  Rounding** ........................................................................................21

**XI  PROVISIONS CONCERNING DISCHARGE AND PROPERTY** ..................**21**

**XII  CRAM DOWN** ..................................................................................................**23**

**XIII  RETENTION OF JURISDICTION** ............................................................**23**

    **A.  Retained Jurisdiction** ...................................................................23

**XIV  NOTICES** .......................................................................................................**25**

**XV  MISCELLANEOUS PROVISIONS** ..............................................................**25**

    **A.  Applicable Law** .............................................................................25

    **B.  Unenforceability of Particular Provisions** ................................25

    **C.  Revocation and Withdrawal Prior to Confirmation** ................26

    **D.  Amendment and Modification** ......................................................26

    **E.  Post-Confirmation Professional Fees** ..........................................26

    **F.  Successors and Assigns** ..................................................................27

    **G.  Binding Effect of Plan** ..................................................................27

088640\1\170007573.v3

I

**INTRODUCTION**

100 Orchard St. LLC d/b/a Blue Moon Hotel, debtor and debtor-in-possession (the **"Debtor"**), hereby proposes the following Plan of Reorganization (the **"Plan"**). Reference is made to the Debtor's Disclosure Statement dated December 15, 2022 (the **"Disclosure Statement"**), for a discussion of the Debtor's history, business, and results of operations along with a summary and analysis of this Plan and certain related matters.

All holders of claims and equity interests entitled to vote to accept or reject the Plan are encouraged to review the Disclosure Statement and this Plan before voting. To the extent the Plan is inconsistent with the Disclosure Statement, the terms of the Plan will govern. No materials other than the Disclosure Statement and related exhibits and schedules have been approved by the United States Bankruptcy Court for the Southern District of New York for use in soliciting acceptances or rejections of the Plan.

II

**DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION**

A.    **Definitions**

In addition to those capitalized terms that are defined in other Articles of the Plan, the following terms (that appear in this Plan as capitalized terms) have the following meanings as used in this Plan.

1.    **"Administrative Claim"** means any cost or expense of administration of the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate, operating the Debtor's business,

and all compensation and reimbursement of expenses of professionals allowed by the Bankruptcy Court under §§ 330, 331 and 503 of the Bankruptcy Code.

**2.**    **"Allowed Amount"** shall mean the dollar amount of an Allowed Claim.

**3.**    **"Allowed Claim"** or **"Allowed"** in connection with a Claim means a Claim against the Debtor to the extent that the Claim is allowed pursuant to this Plan, or (a) a proof of such Claim was (i) timely Filed; or (ii) deemed timely Filed under applicable law or by reason of an order of the Bankruptcy Court; and (b)(i) after the applicable deadlines for filing an objection to the Claim in accordance with this Plan has passed, the Debtor has not Filed an objection or any such objection is withdrawn following the expiration of such applicable deadline(s); (ii) the Claim is allowed (but only to the extent allowed) by a Final Order, or (iii) the Claim is a Claim that was Scheduled by the Debtor in accordance with Rule 1007 of the Bankruptcy Rules and not listed as disputed, contingent or unliquidated.  Prior to the time that an objection has been or may be timely Filed, for the purposes of this Plan, a Claim shall be considered an Allowed Claim if (a) the Claim has been Scheduled; (b) the amount of the Claim specified in any Filed proof of claim equals or is less than the amount of the Claim Scheduled by the Debtor as other than disputed, contingent or unliquidated; (c) the priority of the Claim specified in any Filed proof of claim is of an equal or more junior priority than the priority of the Claim Scheduled by the Debtor; and (d) the Claim has not been Scheduled as disputed, contingent or unliquidated.

**4.**    **"Bankruptcy Code"** means title 11 of the United States Code, as the same was in effect on the Petition Date, as amended from time to time.

**5.**    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York, or such other Court as may hereafter have competent jurisdiction over the Chapter 11 Case.

6.    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, the local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York, and the guidelines and requirements of the Office of the United States Trustee for the Southern District of New York, as each may from time to time be in effect and applicable to the Reorganization Case and proceedings therein.

7.    **"Bar Date"** means (i) August 5, 2022 other than with respect to Governmental Units, and (ii) September 19, 2022 with respect to Governmental Units, which were the deadlines to file proofs of Claim in this Chapter 11 Case as provided by order of the Bankruptcy Court, or (iii) any other deadline to file proof of claims set by the Bankruptcy Court or agreed to by the Debtor.

8.    **"Brick"** means Brick Moon Capital LLC, the current holder of the Brick Mortgage and the Brick Note, and the "Lender" under the Brick Loan Agreement.

9.    **"Brick Claim"** means the Proof of Claim filed by Brick denominated as Claim No. 4 on the Claims Register in the amount of $14,220,000.

10.    **"Brick Loan Agreement"** means the agreement between the Debtor, as borrower, and Brick as lender, dated June 26, 2017 pursuant to which Brick made the Loan.

11.    **"Brick Mortgage"** means that certain mortgage placed on the Hotel in favor of Brick to secure the amounts outstanding under the Note.

12.    **"Brick Repayment Period"** shall mean the five-year period after the Effective Date.

13.    **"Business Day"** means any day other than a Saturday, Sunday, or a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

14.    **"Cash"** means lawful currency of the United States and cash equivalents.

15.    **"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

3

16.      **"Chapter 11 Case"** means the Debtor's Chapter 11 Case for reorganization under Chapter 11 of the Bankruptcy Code, Case Number 22-10358 (DSJ) entitled *In re: 100 Orchard Street LLC d/b/a Blue Moon Hotel* now pending in the Bankruptcy Court.

17.      **"Claim"** means a claim against the Debtor or its property as defined in Section 101(5) and construed in Section 102(2) of the Bankruptcy Code.

18.      **"Claimant"** means the holder of a Claim.

19.      **"Claims Register"** means the list of Claims filed against the Debtor as maintained by the Clerk of the Court.

20.      **"Class"** means a group of Claims or Equity Interests consisting of Claims or interests which are substantially similar to each other as classified pursuant to this Plan.

21.      **"Clerk of the Court"** means the Clerk of the United States Bankruptcy Court for the Southern District of New York located at One Bowling Green, New York, New York 10004.

22.      **"Confirmation"** means entry, within the meaning of Bankruptcy Rules 5003 and 9021, of an order of the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

23.      **"Confirmation Date"** means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

24.      **"Confirmation Hearing"** means the hearing to be held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider Confirmation of this Plan.

25.      **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

26.      **"Debtor"** means 100 Orchard St. LLC d/b/a Blue Moon Hotel.

27.      **"Debtor-in-Possession"** means 100 Orchard St. LLC d/b/a Blue Moon Hotel, as debtor-in-possession in its Chapter 11 Case.

4

28.    "**Deficiency Amount**" shall mean, with respect to a Claim, the amount, if any, by which the Allowed Amount of the Claim exceeds the amount of such Claimant's Secured Claim.

29.    "**Deficiency Claim**" shall mean any Unsecured Claim against a Debtor representing a Deficiency Amount.

30.    "**DIP Account**" means the debtor in possession account maintained by the Debtor.

31.    "**Disbursing Agent**" shall mean Reorganized Debtor, or such other entity as may be designated by the Bankruptcy Court or by the Plan.

32.    "**Disclosure Statement**" means the Debtor's Disclosure Statement to accompany the Plan, and all annexes, schedules or exhibits attached thereto or referenced therein, that relate to the Plan and that is approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

33.    "**Disputed Claim**" means a Claim or a request for payment of an administrative expense, as the case may be, as to which: (a) a proof of claim or a request for payment of an administrative expense, as the case may be, has been filed with the Court or deemed filed under applicable law or order of the Court; (b) an objection has been timely filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or part by a Final Order, or (iii) granted in whole or in part by a Final Order.  Prior to the time that an objection has been or may be timely filed, for purposes of this Plan, a Claim shall be considered a Disputed Claim: (i) to the extent and only to the extent the amount of the Claims specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtor in its Schedules; (ii) any corresponding Claim listed by the Debtor in its Schedules as disputed, contingent or unliquidated, irrespective of the amount scheduled; or (iii) if no corresponding Claim has been listed by the Debtor in its Schedules.

088640\1\170007573.v3

34.    **"Distribution Date"** means any Business Day on or after the Effective Date on or by which Distributions of Cash are made pursuant to this Plan.

35.    **"Distributions"** means the payments of Cash to creditors and others (e.g., Professional Persons) pursuant to and required by the Plan and, as context requires, issuance of Equity Interests.

36.    **"Effective Date"** means the date on which the conditions set forth in Article VII of this Plan have been satisfied or waived.

37.    **"Equity Interest"** means the rights and interests of a shareholder or membership interest in the Debtor.

38.    **"Equity Interest Holder(s)"** means the holder(s) of an Equity Interest.

39.    **"Estate"** means the estate created in a Chapter 11 Case under §541 of the Bankruptcy Code.

40.    **"Executory Contract"** means each agreement, contract or unexpired lease to which any Debtor is a party and which is executory within the meaning of §365 of the Bankruptcy Code.

41.    **"Final Order"** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the docket of such court which, not having been reversed, modified, amended, or stayed, and the time for seeking review of which by way of appeal, petition for certiorari, motion for reargument and rehearing or other review having expired, and as to which no appeal, petition for certiorari, motion for reargument and rehearing or other review is pending, has become conclusive of all matters adjudicated thereby and is in full force and effect.

42.    **"Governmental Unit"** shall have the meaning set forth at §101(27) of the Bankruptcy Code.

088640\1\170007573.v3

43.    **"Hotel"** means the hotel located at 100 Orchard Street, New York, NY 10002 and known as the *Blue Moon Hotel*.

44.    **"Hotel Deed"** means the deeds to the Hotel's real property.

45.    **"Hotel Net Revenues"** means all revenues generated by the Hotel's operations and any other income or monies received by the Hotel, minus all reasonable and customary operating expenses and a reserve of $120,000 per annum.

46.    **"Hotel Sale Proceeds"** means the net sale proceeds from a sale of the Hotel.

47.    **"Insider"** shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

48.    **"Interest"** shall mean Equity Interest.

49.    **"Lien"** means any charge against, or interest in, property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust or statutory lien.

50.    **"NYC"** means the City of New York.

51.    **"NYC Secured Tax Claim"** means the proof of claim filed by NYC denominated as Claim No. 7-2 on the Claims Register in the amount of $412,564.

52.    **"New York Court"** means the Supreme Court of the State of New York, New York County.

53.    **"Brick Note"** means that certain Promissory Note, dated June 26, 2017, made by the Debtor, as borrower, in favor of Brick in the principal amount of $10 million.

54.    **"Person"** shall have the meaning ascribed to such term in §101(41) of the Bankruptcy Code.

55.    **"Petition Date"** means March 23, 2022, the date the Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court.

088640\1\170007573.v3

56.    **"Plan"** means this Plan of Reorganization, as amended or modified, from time to time, and all attachments and exhibits thereto.

57.    **"Priority Claim"** means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim, or (b) a Priority Tax Claim.

58.    **"Priority Tax Claim"** means a Claim by a Governmental Unit entitled to priority pursuant to any provision of Section 507(a)(8) of the Bankruptcy Code.

59.    **"Pro Rata"** means with respect to the holder of an Allowed Unsecured Claim or Equity Interest of a particular Class, the same proportion that the amount of such Allowed Claim or Equity Interest bears to the aggregate amount of all Allowed Claims or Equity Interests of such Class.

60.    **"Professional"** or **"Professional Person"** means all attorneys, accountants, consultants or other Persons retained under an order of the Court on behalf of the Debtor in accordance with Section 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to Sections 327, 328, 330 and 331 of the Bankruptcy Code.

61.    **"Reorganized Debtor"** shall mean the Debtor on or after the Effective Date.

62.    **"Sale"** means the sale of the Hotel by the Reorganized Debtor subsequent to the Effective Date.

63.    **"Sale Proceeds"** shall mean the net sale proceeds from the Sale.

64.    **"SBA"** means the United States Small Business Administration.

65.    **"SBA Claim"** means the Proof of Claim filed by SBA denominated as Claim No. 3 on the Claims Register in the amount of $517,892.

66.    **"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor [Dkt. No. 1].

8

67. **"Secured Claim"** means a Claim that is either (a) secured by a valid perfected and enforceable Lien on property of the Debtor that is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value as set forth in an Allowed Claim or as determined by Final Order in accordance with Section 506(a) or 1111(b) of the Bankruptcy Code, of the interest of the claimant in the Debtor's property securing such Claim, or (b) for which the holder asserts a valid setoff under Section 553 of the Bankruptcy Code. To the extent that the amount claimed by the holder of a Secured Claim exceeds the value (as determined by the Court pursuant to Section 506 of the Bankruptcy Code and Bankruptcy Rules 3012, 7001 and 9014 or as otherwise agreed to by the holder of such Claim and the Debtor) of the property securing such Claim, the holder of such Secured Claim shall have an Unsecured Claim equal to the amount of the excess.

68. **"Secured Tax Claim"** means a Tax Claim that is a Secured Claim.

69. **"Settenbrino"** means Randy Settenbrino, the Debtor's sole Equity Interest Holder.

70. **"Unsecured Claim"** means a Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Priority Claim or Secured Claim.

**B.** **Interpretation, Rules of Construction, Computation of Time, and Choice of Law**

In the event of a conflict between this Plan and the Disclosure Statement, the contents of this Plan shall control over the contents of the Disclosure Statement. The provisions of the Confirmation Order shall control over the contents of this Plan.

Any term used in this Plan that is not otherwise defined in this Plan either in Article II(A) (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply. The

9

definitions and rules of construction contained herein shall also apply to the Disclosure Statement and to the exhibits of this Plan except to the extent expressly so stated in the Disclosure Statement or in each particular exhibit to this Plan.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular Article, Section, Subsection, or Clause contained in this Plan. The word "including" shall mean "including, without limitation" and shall be interpreted in accordance with Section 102(3) of the Bankruptcy Code.

Any reference in this Plan to an existing document or exhibit means such document or exhibit, as it may have been amended, restated, modified, or supplemented as of the Effective Date.

Captions and headings to Articles, Sections, Subsections, and Clauses in this Plan are inserted for convenience of reference only and shall neither constitute a part of this Plan nor in any way affect the interpretation of the provisions hereof.

Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

All exhibits to this Plan are incorporated into this Plan and shall be deemed to be included in this Plan, regardless of when they are filed.

Subject to the provisions of any contract, certificate, bylaws, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules.

## III

## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

A designation of the Classes of Claims and Equity Interests under this Plan is set forth below.  Administrative Claims (including fees and expenses of Professional Persons allowed in a Final Order of the Bankruptcy Court)  and statutory fees due to the United States Trustee have not been classified, in accordance with Bankruptcy Code § 1123(a)(1).  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such different Class.

### Class 1 – NYC Secured Tax Claim

Class 1 consists of the Allowed NYC Secured Tax Claim.

### Class 2 – Brick Secured Claim

Class 2 consists of the Allowed Brick Secured Claim.

### Class 3 – SBA Secured Claim

Class 3 consists of the Allowed SBA Secured Claim.

### Class 4 - NYC Water Board Secured Claim

Class 4 consists of the Allowed NYC Water Board Claim.

### Class 5 - Employee Wage Claim

Class 5 consists of the Allowed Employee Wage Claim.

### Class 6 - Priority Tax Claims

Class 6 consists of Allowed Priority Tax Claims.

### Class 7 – General Unsecured Claims

Class 7 consists of the holders of Allowed Unsecured Claims.

11

**Class 8 – Equity Interests**

Class 8 consists of Settenbrino's Equity Interest.

**IV**

**TREATMENT OF CLASSES OF CLAIMS, EQUITY INTERESTS,
AND UNCLASSIFIED CLAIMS OR INTERESTS**

A.     **Unclassified Claims**

1.  **United States Trustee Fees**

All fees payable by the Debtor under Section 1930 of Title 28 of the United States Code that have not been paid prior to the Effective Date shall be paid by the Debtor, the Reorganized Debtor or the Disbursing Agent on the Effective Date.  In addition, the Debtor, or any successor thereto by merger, consolidation or otherwise, on or after the Effective Date, shall be liable for, and the Disbursing Agent on behalf of the Reorganized Debtor shall pay, such fees until the entry of a final decree in this case or until the case is converted or dismissed.  The Disbursing Agent shall file post-confirmation operating reports with the Bankruptcy Court and the United States Trustee until a final decree is entered.

2.     **Administrative Claims**

a.   **Generally**

Except as provided otherwise in this Article IV of this Plan, each holder of an Allowed Administrative Claim (*including*, without limitation, the fees and expenses incurred by Professional Persons) allowed by a Final Order of the Bankruptcy Court) and Allowed Administrative Claims arising under Bankruptcy Code §503(b)(9)) shall be paid 100%, in Cash, (i) on the later to occur of the Effective Date or the date the order allowing such Administrative Claim becomes a Final Order, or (ii) upon such other terms as may exist in the Debtor's or the Reorganized Debtor's ordinary course of business; or (iii) upon such terms as may exist pursuant to Order of the Bankruptcy Court or an agreement between the holder of an Allowed

12

Administrative Claim and the Debtor or Reorganized Debtor.

<b>b.    <u>Accounts Payable and Other Obligations Which Arose Post-Petition</u></b>

Administrative Claims representing obligations incurred by the Debtor or the Reorganized Debtor after the Confirmation Date may be paid by the Reorganized Debtor in the ordinary course of business and without further Bankruptcy Court approval.

<b>c.    <u>Professional Fees and Expenses</u></b>

As more fully set forth herein, after the Confirmation Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professional Persons employed by the Reorganized Debtor in connection with the implementation and consummation of this Plan, the claims reconciliation process and any other matters as to which the Reorganized Debtor shall engage or retain such Professional Persons.  The fees and expenses of such Professional Persons shall be submitted monthly to the Reorganized Debtor by such Professional Persons in the form of a detailed invoice and shall be paid by the Disbursing Agent within ten (10) Business Days after such submission.

If the Reorganized Debtor disputes the reasonableness of any such invoice within the lesser of (a) ten (10) days of receipt of such proposed fees or (b) fourteen (14) days after transmittal to the Reorganized Debtor, the Disbursing Agent shall timely pay the undisputed portion of such invoice, and the Reorganized Debtor, or the affected Professional Person may, after attempting to resolve the dispute, submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

<b><u>Class 1 -- NYC Secured Tax Claim</u></b>

Class 1 consists of the Allowed NYC Secured Tax Claim. The Allowed NYC Secured Tax Claim will be paid 100%, in Cash, including interest, over five (5) years from the Effective Date,

13

in equal monthly payments of $7,501, with the first payment due on or before June 1, 2023. The City will retain its Lien on the Hotel, until the Allowed NYC Secured Tax Claim is paid in full.

In the event the Hotel is sold, the Allowed NYC Secured Claim, less any payments previously made, will be paid 100% from the Hotel Sale Proceeds.

Class 1 is impaired and is entitled to vote on the Plan.

**Class 2 – Brick Secured Claim**

Class 2 consists of the Allowed Brick Secured Claim. The Allowed Brick Secured Claim will be paid 100%, in Cash, with simple interest at 7% per annum. Brick shall receive all Net Hotel Revenues, during the Brick Repayment Period, but in no event less than $70,000 per month commencing April 1, 2023.  In addition to the minimum monthly payments, Brick shall receive the Net Hotel Revenues, on or before January 30th of each year after the Effective Date and continuing during the Brick Repayment Period. At the end of the Brick Repayment Period, the outstanding amount of the Allowed Brick Secured Claim, together with all accrued and unpaid interest, fees and other charges, shall be paid in full.

If the Allowed Brick Secured Claim is not paid in full at the end of the Brick Repayment Period, then the Reorganized Debtor shall list the Hotel for sale and, if the Hotel is not sold within 180-days after the expiration of the Brick Repayment Period, with the written consent of Brick, then the Reorganized Debtor shall deliver the Hotel Deed to Brick.

In the event the Reorganized Debtor defaults on any payment required by the Plan, Brick shall provide written notice of such default by overnight courier to the Reorganized Debtor at 100 Orchard Street, New York, New York, Attn: Randy Settenbrino with a copy to David H. Wander, Esq., Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, New York 10018. The Reorganized Debtor shall have ten (10) business days after receipt of the default notice to cure

14

such default. If such default is not timely cured, Brick may file a motion to convert the Debtor's

Chapter 11 Case to a chapter 7 liquidation.

Brick shall be entitled to credit bid the full amount of its Allowed Secured Claim at any

auction of the Hotel. Brick shall be entitled to veto any private sale of the Hotel which does not

fully pay its Allowed Class 2 Secured Claim.

Any Deficiency Claim of Brick, in connection with the Allowed Brick Secured Claim, shall

be treated as a Class 7 General Unsecured Claim.

Class 2 is impaired and is entitled to vote on the Plan.

### Class 3 – SBA Secured Claim

Class 3 consists of the Allowed SBA Secured Claim. The Allowed SBA Secured Claim

shall be paid 100%, in cash, in equal, consecutive, monthly payments of $1,250 over twenty (20)

years from the Effective Date, with the first payment due on June 1, 2023.

The SBA shall retain its Lien on the Debtor's personal property.

Any Deficiency Claim of the SBA, in connection with the SBA Secured Claim, shall be

treated as a Class 7 General Unsecured Claim.

Class 3 is impaired and is entitled to vote on the Plan.

### Class 4 - NYC Water Board Secured Claim

Class 4 consists of the Allowed NYC Water Board Secured Claim. The Allowed NYC Water

Board Claim will be paid 100%, in cash, over five (5) years from the Effective Date, in equal monthly

payments of $444.69, with the first payment due on or before the first day of the first month that is

at least 30-days after the Effective Date.

The City will retain its lien on the Hotel until the Allowed NYC Water Board Secured Claim

is paid in full.

Class 4 is impaired and is entitled to vote on the Plan.

088640\1\170007573.v3

**Class 5 - Employee Wage Claim**

Class 5 consists of the Allowed Employee Wage Claim. The Allowed Class 5 claim will be paid in full on the Effective Date.

Class 5 is unimpaired and is deemed to have voted in favor of the Plan.

**Class 6 - Priority Tax Claims**

Class 6 consists of the Allowed Priority Tax Claims. Each holder of an Allowed Priority Tax Claim shall be paid 100%, in cash, with interest at the statutory rate, pursuant to Bankruptcy Code § 1129(a)(9)(C), in equal monthly payments, over five (5) years.

The holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of interest, or on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim, except to the extent allowed as a part of an Allowed Priority Tax Claim pursuant to § 507(a)(2) of the Bankruptcy Code.

Class 6 is unimpaired and is deemed to have voted in favor of the Plan.

**Class 7 – General Unsecured Claims**

Class 7 consists of the Allowed General Unsecured Claims. Each holder of an Allowed Class 7 Claim (including any Deficiency Claim) shall be paid 50% of their Allowed Claims, in cash, without interest over four (4) years from the Effective Date, with 10% on the Effective Date plus 10% on or before (i) one year after the Effective Date, (ii) two years after the Effective Date, (iii) three years after the Effective Date, and (iv) four years after the Effective Date.

In the event the Hotel is sold, the Allowed Class 7 Claims shall be paid, after payment in full of all Allowed Administrative Claims and payment of Classes 1-6, as provided for in the Plan, any remaining unpaid amount of its 50% distribution.

Class 7 is impaired and is entitled to vote on the Plan.

088640\1\170007573.v3

**Class 8 – Equity Interests**

The Allowed Class 8 Equity Interest holder shall retain his Equity Interest as it existed on the Petition Date.

In the event the Hotel is sold, the Allowed Class 8 Equity Interest holder shall receive the remaining Hotel Sale Proceeds after payment of Administrative Claims and Allowed Claims in Classes 1-7.

**B.      Controversy with Respect to Impairment**

In the event of a controversy as to whether a Claimant or holder of an Equity Interest is impaired, the Court shall, after notice and a hearing, determine such controversy.

**V**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.      Treatment of Executory Contracts and Unexpired Leases**

As of the Confirmation Date, unless rejected by a notice of rejection filed and served by the Debtor at least 10 days prior to the initial Confirmation Hearing, any executory contract or unexpired lease of entered into by the Debtor that has not yet been (a) assumed and assigned, or (b) assumed, shall be deemed to be assumed by the Debtor as of the Confirmation Date.  The Confirmation Order shall be deemed an order under § 365(a) of the Bankruptcy Code assuming any such executory contracts or leases. For avoidance of doubt, all of the Leases shall be deemed assumed upon Confirmation.

**VI**

**MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN**

**A.      Source of Payments**

The Plan will be funded from funds in the DIP Account and the Hotel's revenues. Payments due on the Effective Date will be funded from the DIP Account. Thereafter, the payments due

17

under the Plan will be funded from the Hotel's net income, which will include revenues from the Hotel's food and beverage operations.

**B.      Transfer Taxes**

There will be no Transfer Taxes owed on any transaction in connection with or in contemplation of the Plan, including any Sale of the Hotel by the Debtor during the Brick Repayment Period.

**C.      Management of Reorganized Debtor**

The Reorganized Debtor will be managed by Setenbrino, who will continue to manage the Hotel on a day-to-day basis, and his wife will continue to handle the financial reporting and bookkeeping functions.

## VII

## CONDITIONS PRECEDENT TO THE OCCURRENCE OF THE EFFECTIVE DATE

The Effective Date will occur only if all of the following conditions have been fulfilled or waived:

1.      All conditions precedent to the confirmation of the Plan and the occurrence of the Effective Date set forth in the Plan.

2.      The Confirmation Order shall have been entered and become a Final Order; and

3.      The Debtor shall have deposited into Debtor's counsel's attorney trust account all funds needed to satisfy all payments required on the Effective Date.

## VIII

## OBJECTIONS TO CLAIMS AND PROCEDURES
## FOR RESOLVING AND TREATING CLAIMS

**A.      Objections to Claims**

All objections to Claims shall be filed by the Debtor and served on the holders of such Claims within thirty (30) days after the Confirmation Date. If the objection to a proof of Claim

18

that relates to a Disputed Claim has not been filed by the applicable date, the Claim to which the proof of Claim relates shall be treated as an Allowed Claim for purposes of Distributions under the Plan. For the avoidance of doubt, no objection shall be made to the Brick Claim, which shall be deemed Allowed as set forth in the Plan.

**B.      Resolution of Disputed Claims**

Disputed Claims shall be divided into two (2) portions: the "non-disputed portion" and the "disputed portion." The Reorganized Debtor shall pay the non-disputed portion of a Disputed Claim in accordance with Plan provisions for payment of a Claim in its Class. There will be no reserve for Disputed Claims.

**C.      Estimation**

The Debtor or the Reorganized Debtor may, at any time, request the Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor have previously objected to such Claim. The Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.

**D.      Allowance of Disputed Claims**

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, within thirty (30) days after the date on which the Claim becomes an Allowed Claim, or as soon thereafter as is practicable, pay to the holder of such Allowed Claim the amount of Cash that such holder would have been entitled to receive under the Plan if such disputed portion of such Claim had been an Allowed Claim on the Effective Date.

088640\1\170007573.v3

# IX

## PROVISIONS CONCERNING CAUSES OF ACTION

Except as otherwise provided herein or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Reorganized Debtor shall retain, and may, with its determination of the best interest of the estate, enforce any claims, rights and causes of action that have been or may be commenced by the Debtor including, but not limited to, those arising under §§ 544 through 550 of the Bankruptcy Code; provided however that any such claims, rights, and causes of action against Brick, to the extent not released pursuant to the Cash Collateral Order, shall be deemed released on the Effective Date.

# X

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Disbursing Agent

The Reorganized Debtor shall act as Disbursing Agent under the Plan.  Settenbrino shall be in charge of all matters relating to the Distributions required by the Plan.  In the event the Disbursing Agent changes prior to the entry of an order of final decree closing the Debtor's Chapter 11 case, the Bankruptcy Court, the United States Trustee, and Brick shall be notified in writing of the identity and address of the new Disbursing Agent.

### B.    Unclaimed Distributions

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders unless no Proof of Claim has been filed, in which case then to the address set forth on the Schedules filed with the Court, unless superseded by a written notice to the Disbursing Agent providing actual knowledge to the Disbursing Agent of a change of address.

If any holder's Distribution is returned as undeliverable, no further Distributions to such

088640\1\170007573.v3

holder shall be made unless and until the Disbursing Agent is notified in writing of such holder's then current address, at which time all Distributions shall be made to such holder, without interest.

**C.    Professional Fees and Expenses**

Each of the Professionals requesting compensation for services rendered and reimbursements disbursed in the Chapter 11 Case shall file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Case incurred through the Confirmation Date within forty five (45) days after entry of the Confirmation Order.

**D.    Rounding**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect the rounding of such fraction to the nearest whole cent with the one-half cent being rounded up to the nearest whole cent.

## XI

## PROVISIONS CONCERNING DISCHARGE AND PROPERTY

**1.    Vesting of Property**

As of the Effective Date, all of the Debtor's assets shall vest in the Reorganized Debtor, free and clear of all Liens, Claims and Interest, except for the Claims and Liens of Brick, the SBA, and NYC and as otherwise provided herein or the Confirmation Order.

**2.    Discharge of all Claims**

Except as otherwise provided by the Plan, pursuant to § 1141 of the Bankruptcy Code, the Confirmation Order shall act as a discharge of all Claims that arose prior to the Confirmation Date, other than the Claims and Liens of Brick.

**3.    Injunction and Stays**

**Except with respect to the Claims and Liens of Brick, the SBA, and NYC or as otherwise expressly provided herein and related documents, all persons or entities who have**

21

**held, hold or may hold claims against the Debtor are, with respect to any such Claims and Liens, permanently enjoined on and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner directly or indirectly, any suit, action or other proceeding of any kind (including without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the Reorganized Debtor, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entities, (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against the Debtor or the Reorganized Debtor, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entity, or any property of any such transferee or successor, (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance or lien of any kind against the Debtor or the Reorganized Debtor, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities, and (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor or the Reorganized Debtor, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities.**

**4.    <u>Exculpation</u>**

To the extent permitted under 11 U.S.C. § 1125(e), neither the Debtor, Brick, nor any of their respective officers, directors, employees and other agents, financial advisors, attorneys and accountants, or their respective successors in interest, shall have any liability to any holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation,

preparation and pursuit of Confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 Case or the property to be distributed under the Plan except for liability based upon willful misconduct or gross negligence as finally determined by the Bankruptcy Court.  For the avoidance of doubt, nothing in this Plan shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules Professional Conduct.

## XII

## CRAM DOWN

In the event Classes of Claims do not vote to accept this Plan, the Debtor reserves its right to invoke the "Cram Down" provisions of Bankruptcy Code §1129(b).  In the event the Debtor exercises such right, the Debtor reserves the right to modify this Plan to the extent, if any, the confirmation of this Plan under §1129(b) of the Bankruptcy Code requires modification.

## XIII

## RETENTION OF JURISDICTION

A.    **Retained Jurisdiction**

From and after the Confirmation Date and until such time as the Chapter 11 Case are closed, the Bankruptcy Court shall retain jurisdiction over the Debtor's Chapter 11 Case for all purposes permitted under the Code, including, without limitation, the following:

1.      To hear and determine any dispute relating to the Plan, including without limitation those with respect to the implementation and execution of the Plan and the acts, transactions, and occurrences contemplated thereby.

2.      To hear and determine all issues arising out of any motions, applications, adversary proceedings or contested or litigated matters in the Chapter 11 Case pending at the Confirmation Date or commenced thereafter.

088640\1\170007573.v3

3.      To order recovery of any assets of the Debtor, whether title is presently held in the name of the Debtor or a third party.

4.      To hear and determine motions to approve the sale of assets of the Debtor under § 363 of the Bankruptcy Code and/or the rejection or assumption of executory contracts under § 365 of the Bankruptcy Code.

5.      To hear and determine all issues relating to any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the Chapter 11 Case.

6.      To hear and determine all objections to Claims and all controversies concerning classification, allowance, valuation, liquidation, estimation, or satisfaction of Claims.

7.      To make orders allowing amendment of the schedules filed in the Chapter 11 Case for any purpose including, without limitation, to prosecute objections to Claims not previously listed as disputed, contingent or unliquidated.

8.      To hear and determine all applications for compensation of professional and similar fees and reimbursement of expenses arising out of or relating to the case or any Claims.

9.      To hear and determine any and all motions to abandon property of the Debtor's Estate.

10.     To make such other orders or give such directions as permitted by § 1142 of the Bankruptcy Code.

11.     To consider and order any modifications or amendments requested to the Plan.

12.     To remedy any defect or omission or reconcile any inconsistency in the Plan or the Confirmation Order in such manner as may be necessary or desirable to carry out the purposes and intent of the Plan.

13.     To make all orders necessary or appropriate to carry out the provisions of the Plan.

14.     To enforce all orders previously entered by the Bankruptcy Court.

088640\1\170007573.v3

15.    To determine such other matters as may be provided for in the Confirmation Order

or as may be authorized under the Bankruptcy Code.

## XIV

## NOTICES

Except as otherwise herein provided, all notices required to be made in or under this Plan

shall be in writing and shall be mailed by registered or certified mail, return receipt requested:

If to the Debtor or the Disbursing Agent:

> 100 Orchard St. LLC d/b/a Blue Moon Hotel
> 100 Orchard Street
> New York, NY 10002
> Attn: Randy Settenbrino

With a copy to:            Tarter Krinsky & Drogin LLP
                           1350 Broadway, 11th Floor
                           New York, New York 10018
                           Attn: David H. Wander, Esq.

Any person may change the address at which he, she or it is to receive notices for purposes

of this Plan by sending written notice pursuant to this provision to the Debtor (or the Disbursing

Agent) as provided in this Article.

## XV

## MISCELLANEOUS PROVISIONS

A.    **Applicable Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights

and obligations arising under this Plan are governed under New York Law.

B.    **Unenforceability of Particular Provisions**

Should any provision in this Plan be determined to be unenforceable in whole or in part,

such determination shall in no way limit or affect the enforceability and operative effect of the

088640\1\170007573.v3

remainder of this Plan, including any of its provisions to the extent not determined to be unenforceable.

**C.**      **Revocation and Withdrawal Prior to Confirmation**

The Debtor reserves the right to revoke and withdraw this Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws this Plan, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void, and in such event nothing contained herein shall be deemed to constitute a waiver or release of any claim by or against the Debtor, or any other entity or to prejudice in any manner the rights of the Debtor, or any entity in any further proceedings involving the Debtor.

**D.**      **Amendment and Modification**

The Debtor may propose amendments to, or modification of, this Plan at any time at or before Confirmation.  After Confirmation of this Plan, the Debtor may, with the approval of the Bankruptcy Court and so long as it does not materially adversely affect the treatment of any Claim or Equity Interest, amend this Plan to remedy any defect or omission or reconsider any inconsistencies in this Plan or in the order of Confirmation as necessary or desirable to carry out the purpose and effect of this Plan; provided however that the Plan shall not be amended with respect to the treatment of Brick's Class 2 Claim**.**

**E.**      **Post-Confirmation Professional Fees**

Subsequent to the Confirmation Date, the Debtor or the Reorganized Debtor shall be authorized and directed to pay reasonable professional fees and expenses relating to the post-confirmation administration of its estate and this Plan incurred by its Professionals, from the Plan Contribution or from funds otherwise obtained from the Class 6 Equity Interest Holder.

26

**F.**     **Successors and Assigns**

The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**G.**     **Binding Effect of Plan**

Upon the Effective Date, all of the provisions of this Plan shall be binding on the Debtor, on all holders of Claims and Liens, on all holders of Equity Interests, and on all other entities who are affected (or whose interests are affected) in any manner by this Plan.

Dated:  New York, New York
          December 15, 2022

**100 ORCHARD ST. LLC D/B/A BLUE MOON HOTEL**
*Debtor and Debtor-in-Possession*

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for 100 Orchard St. LLC d/b/a Blue Moon Hotel*
*Debtor and Debtor-in-Possession*

By:   /s/ Randy Settenbrino
          Randy Settenbrino
          Managing Member

By:   /s/ David H. Wander
          David H. Wander, Esq.
          Scott S. Markowitz, Esq.
          Alexander Tiktin, Esq.
          dwander@tarterkrinsky.com
          smarkowitz@tarterkrinsky.com
          atiktin@tarterkrinsky.com

27