**TARTER KRINSKY & DROGIN LLP**
*Attorneys for 100 Orchard Street LLC*
*dba Blue Moon Hotel*
*Debtor and Debtor-in-Possession*
1350 Broadway, 11th Fl.
New York, NY  10018
David H. Wander, Esq. (dwander@tarterkrinsky.com)
Scott Markowitz, Esq. (smarkowitz@tarterkrinsky.com)
Alexander R. Tiktin, Esq. (atiktin@tarterkrinsky.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>100 ORCHARD ST. LLC<br>D/B/A BLUE MOON HOTEL,<br><br>       Debtor. | Chapter 11<br><br>Case No. 22-10358 (DSJ) |
| 100 ORCHARD ST. LLC<br>D/B/A BLUE MOON HOTEL,<br><br>       Plaintiff,<br><br>-against-<br><br>ELIYAHU IDI and BLUE MOON HOTEL NYC INC.,<br><br>       Defendant. | Adv. No. |

**COMPLAINT BY DEBTOR OBJECTING TO PROOF OF
CLAIM NO. 10-1 FILED BY ELIYAHU IDI AND BLUE MOON
HOTEL NYC INC. AND ASSERTING COUNTERCLAIMS**

Plaintiff, 100 Orchard St. LLC, debtor and debtor-in-possession (the **"Debtor"**), by its attorneys, submits this objection and counterclaims to Claim No. 10-1 filed by Eliyahu Idi and Blue Moon Hotel NYC Inc., pursuant to § 502 of Bankruptcy Code and Bankruptcy Rules 3007 and 7001.

## THE PARTIES

1. Plaintiff 100 Orchard Street LLC (**"Plaintiff"** or **"Debtor"**) is a New York limited liability company.

2. Defendant Eliyahu Idi (**"Idi"**) is an individual who, upon information and belief, resides in the State of New York.

3. Defendant Blue Moon Hotel NYC Inc. (**"Blue Moon"**) is a New York corporation with its principal place of business in New York.

4. Upon information and belief, Idi is the sole member of Blue Moon.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

6. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS

7. On March 23, 2022 (**"Petition Date"**), the Debtor filed a chapter 11 petition for reorganization. After the Petition Date, the Debtor has continued in possession of its property and the operation of its business.

8. The Debtor owns and operates a 22-unit hotel known as the *Blue Moon Hotel* located at 100 Orchard Street, New York, NY 10002 (the **"Hotel"**).

**Idi Lease**

9. Prior to the Petition Date, the Debtor, as landlord, entered into a lease agreement dated April 1, 2015, (the **"Lease"**) with Idi, as tenant, for the entire premises at 100 Orchard Street, New York, NY (the **"Lease"**). A copy of the Lease is annexed hereto as **Exhibit A**.

10. The Lease has an initial term commencing April 1, 2015 and expiring on March 31, 2035 (the **"Term"**).

11. The Lease was a triple-net lease, whereby the tenant was responsible for payment of all costs and expenses of maintaining the property, including payment of utilities, real estate taxes, insurance and other charges.

12. Upon information and belief, on or about April 17, 2015, Idi formed Blue Moon to be the managing agent for the Hotel.

**L&T Settlement**

13. In 2018, the Debtor filed a petition for non-payment (**"Non-Payment Petition"**) against Idi and Blue Moon, in the Civil Court for the City of New York, County of New York, Non-Housing Part, Index No. 77749/18 (the **"L&T Proceeding"**).

14. According to the Non-Payment Petition, the Debtor sought to recover unpaid rent, in the amount of $755,840.98, and unpaid real estate taxes, in the amount of $481,587.76.

15. Thereafter, the parties entered into a stipulation of settlement dated January 28, 2019 (the **"Settlement Agreement"**). A copy of the Settlement Agreement is annexed hereto as **Exhibit B.**

16. Pursuant to the Settlement Agreement, Idi agreed to pay $400,000 to Plaintiff, over an approximate eight-month period (the **"Settlement Payments"**).

17. The first of the Settlement Payments was due, on or before January 29, 2019, in the amount of $50,000.

18. Idi also agreed to pay $10,000 to Plaintiff for Plaintiff's reasonable legal fees.

19. Idi also agreed that, upon default of any payment, he would consent to entry of a final judgment in the amount of $745,000.

20. Pursuant to the Settlement Agreement, if all the required payments were made, the tenant's rights and obligations would be assigned to Blue Moon, and Idi would personally guarantee Blue Moon's obligations under the Lease.

3

**The Illusory Memorandum Agreement**

21.     After making some of the Settlement Payments, Idi told the Debtor's principal, Randy Settenbrino (**"Settenbrino"**), that if he did not agree to sell the Hotel to Idi, no further Settlement Payments would be made and then Settenbrino would lose the Hotel to the Debtor's mortgagee.

22.     Thereafter, the parties entered into an undated, written agreement, upon information and belief, in or about the beginning of October 2019 (the **"Memorandum Agreement"**).  A copy of the Memorandum Agreement is annexed hereto as **Exhibit C**.

23.     According to the Memorandum Agreement, Idi could purchase the Hotel for $18 million, with a $2 million credit for his purported investment in the Hotel, for a net payment of $16 million (the **"Purchase Price"**).

24.     Idi agreed to pay a deposit totaling $1,000,000, payable as follows: (i) $500,000 upon full execution of a formal contract; (ii) $250,000 on or before November 1, 2019; and (iii) $250,000 on or before December 1, 2019.

25.     Under the Memorandum Agreement, a closing was to occur on or about April 30, 2020, and no later than May 1, 2020.

26.     Idi agreed to pay an additional $25,000 a month, if there was no closing by June 30, 2020, and these payments would be credited toward the purchase price.

27.     Idi agreed that, if the closing took place after June 30, 2020, but before May 1, 2022, the purchase price would increase by $500,000.

28.     According to the framework for the Memorandum Agreement, a formal contract of sale was to be executed on or before October 31, 2019.

29.     Thereafter, sometime in October 2019, Irwin Fingerit, Esq., as counsel for the seller, sent an initial draft of a purchase and sale agreement to Robert Moore, Esq., as counsel for the purchaser.

4

30. Mr. Moore did not respond to Mr. Fingerit.

31. On November 18, 2019, Mr. Fingerit sent an email to Mr. Moore stating that he had called Mr. Moore at least three times and sent him an email about the proposed sale.

32. Upon information and belief, on November 18, 2019, Mr. Moore finally responded to Mr. Fingerit. Among other things, Mr. Moore stated that he is a litigator "with a busy schedule." Mr. Moore also stated that he would speak with his client in a few days and respond by the end of the work week.

33. On November 21, 2019, Mr. Moore sent an email to Mr. Fingerit, stating that he spoke with Idi and that Mr. Moore would send a markup of the proposed contract of sale the following week.

34. However, the following week Mr. Moore failed to send Mr. Fingerit a markup of the proposed contract.

35. Instead, on December 30, 2019, Mr. Moore send Mr. Fingerit a check for $7,500, which he did not cash.

36. On January 16, 2020, Mr. Moore sent an email to Mr. Fingerit and suggested that they have a meeting together with their respective clients.

37. On January 27, 2020, Mr. Moore sent Mr. Fingerit a draft markup of the proposed contract with a purchaser's rider.

38. Upon information and belief, in or about March 2020, Idi and Blue Moon vacated the Hotel.

39. On or about June 3, 2020, Idi and Blue Moon filed a complaint against Settenbrino and Plaintiff (the **"Idi Complaint"**), in the Supreme Court of the State of New York, Country of New York, Index No. 153238/2020, captioned *Eli Idi and Blue Moon Hotel NYC Inc. v. Randy Settenbrino d/b/a 100 Orchard Street LLC and 100 Orchard Street LLC* (the **"State Court Lawsuit"**).

5

40.     The Idi Complaint contains three causes of action: (i) the first cause of action is for declaratory relief, declaring that "Defendants have failed to negotiate a formal contract of sale in good faith and thus are in default and breach of their obligations under the Memorandum Agreement; (ii) the second cause of action is for breach of contract; and (iii) and the third cause of action is for attorneys' fees.

41.     To support the first cause of action, Idi claims that the proposed "draft sale contract was missing material provisions and contained provisions that were in conflict with the Memorandum Agreement and/or the applicable law." Idi Complaint, ¶ 28. In addition, Idi alleged that the Debtor failed to respond to Idi's proposed revisions of the draft sale contract. *Id.* Further, Idi alleged that the Debtor "refus[ed] to accept the $7,500.00 payment tendered by Plaintiffs pursuant to the Memorandum Agreement." Idi also alleged that the Debtor "fail[ed] to provide financial statements for the Hotel needed by Plaintiffs to obtain financing." Idi contended that the Debtor, therefore, "failed to negotiate a formal contract of sale in good faith." *Id.* Idi also alleges that he and Blue Moon "performed and/or tendered performance of all their obligations under the Memorandum Agreement, including endeavoring to negotiate a formal contract of sale in good faith." *Id.* ¶ 29. Idi asserted that Defendant's binding commitment to sell the Hotel contained in the Memorandum Agreement "create an equitable vendee's lien in the Hotel." *Id.* ¶ 30.

42.     In the second cause of action, Idi and Blue Moon seek judgment "i) holding Defendants liable for payment to Plaintiffs of all monetary damages, direct and/or consequential, incurred as a result of breach including but not limited to the $259,624.56 in Signing Payments and $2 million Idi Investment as provided in the Memorandum Agreement, and ii) holding the Lease and all obligations of Plaintiffs thereunder to be terminated." *Id.* ¶ 33.

43.     In the third cause of action, Idi and Blue Moon seek judgment for reimbursement of their attorneys fees, pursuant to the Memorandum Agreement which provides, in relevant part that "[i]n the event a dispute arises under this Agreement, the prevailing party shall be entitled to

6

recover his / its reasonable attorneys' fees from the non-prevailing party." *Id.* at 35.

44. On or about September 24, 2020, Idi filed a motion for a default judgment. The defendants opposed the motion and filed a cross motion to dismiss the Idi Complaint.

45. On March 23, 2022, after the Debtor filed its chapter 11 petition, the State Court Lawsuit was automatically stayed.

**The Idi Claim**

46. On August 5, 2022, Idi filed a proof of claim which has been designated Claim No. 10-1 (the **"Idi Claim"**), as a secured claim in the amount of $2,298,458.94.

### AS AND FOR A FIRST CAUSE OF ACTION: OBJECTION TO IDI CLAIM
**[Breach of Contract]**

47. The Debtor repeats and realleges paragraphs 1 through 46, as though set forth in full herein.

48. Idi breached the Settlement Agreement by failing to timely remit all the Settlement Payments.

49. Idi breached the Memorandum Agreement:

(a) by failing to negotiate in good faith;

(b) by failing to take any action to have a contract of sale executed by October 31, 2019;

(c) by failing to pay an initial deposit of $500,000 on or before October 31, 2019;

(d) by failing to pay the required deposit of $250,000 on or before November 1, 2019;

(e) by failing to pay the required deposit of $250,000 on or before December 1, 2019;

(f) by failing to pay all expenses of the building, including the mortgage and real estate taxes, as required by the Memorandum Agreement;

(g) by failing to cure or pay the outstanding building code violations; and

(h) by failing to make all the rent payments in 2019 after the

7

Memorandum Agreement was executed.

50. The first cause of action in the Idi Complaint has no merit because, after the Debtor sent Idi's counsel a draft contract in October of 2019, Idi's counsel failed to respond prior to October 31, 2019. In fact, Idi's counsel failed to provide the Debtor with any comments or revisions to the draft contract, on or before October 31, 2019, nor did he provide Debtor's counsel with a new proposed contract of sale.

51. The first cause of action has no merit because the Debtor had no obligation to provide financial statements in connection with Idi's purported attempts to obtain financing for a purchase of the Hotel. Moreover, Idi had been operating the Hotel, since April 1, 2015, and, therefore, the Debtor had no financial statements that could have assisted Idi in obtaining any refinancing. The only financial statements Idi actually requested were, upon information and belief, those pertaining to Randy Settenbrino, personally.

52. The second cause of action has no merit because, as of October 31, 2019, Idi was in material breach of, and had defaulted on his obligations under, the Memorandum Agreement.

53. As of October 31, 2019, the Debtor had been negotiating in good faith with Idi.

54. As a result of Idi's breaches of the Settlement Agreement and the Memorandum Agreement, the Debtor was excused from further performance of its obligations.

55. Accordingly, the Debtor objects to the Idi Claim and requests that it be disallowed and expunged.

**AS AND FOR A SECOND CAUSE OF ACTION: OBJECTION TO IDI CLAIM**
**[Illusory Contract]**

56. The Debtor repeats and realleges paragraphs 1 through 55, as though set forth in full herein.

57. The Memorandum Agreement stated, in pertinent part:

> In the event the parties fail to close, then all monies deposited by Buyer shall be returned to Buyer by Seller, and all agreements,

8

notes, and stipulations, etc. between the parties shall be deemed null and void.

58. The Memorandum Agreement also stated:

Failure to make any payment due under this Agreement shall render this Agreement null and void, and Buyer shall forfeit all monies paid toward deposit as Seller's sole and exclusive remedy.

59. The Memorandum Agreement also stated:

In addition, if the parties fail to come to a formal agreement, the lease is voided and Tenant and Buyer may walk away from the Property, and Seller shall release them from any and all liability under the lease or this Agreement.

60. Idi intended for these provisions of the Memorandum Agreement to excuse him and Blue Moon from any binding obligations.

61. The Memorandum Agreement was a ploy for Idi to avoid his personal obligations under the Lease and the Settlement Agreement.

62. The Memorandum Agreement was void *ab initio* because it was illusory.

63. In effect, whatever consideration Idi gave under the Memorandum Agreement was so insubstantial as to impose no obligation.

64. The Memorandum Agreement is void for lack of consideration.

65. The Idi Claim is based upon the Memorandum Agreement, which is void for lack of mutuality of obligations.

66. Accordingly, the Debtor objects to the Idi Claim and requests that it be disallowed and expunged.

## AS AND FOR A THIRD CAUSE OF ACTION: OBJECTION TO IDI CLAIM
### [Duress]

67. The Debtor repeat and realleges paragraphs 1 through 66, as through set forth in full herein.

68. At the time the Debtor entered the Memorandum Agreement, Idi threatened to

9

unlawfully withhold the Settlement Payments that were lawfully due to the Debtor, unless the Debtor agreed to sign the Memorandum Agreement.

69. Due to Idi's unlawful threat to withhold payment of the Settlement Payments would cause the mortgagee to file a foreclosure of the Hotel, the Debtor executed the Memorandum Agreement.

70. Under New York law, the existence of economic duress is demonstrated by proof that one party to a contract has threatened to breach the agreement by withholding performance unless the other party agrees to some further demand.

71. Under New York law, a contract executed under economic duress is voidable.

72. The Idi Claim relies on the Memorandum Agreement, which should be held voidable under the doctrine of duress.

73. Accordingly, the Debtor objects to the Idi Claim and requests that it be disallowed and expunged.

### AS AND FOR A FOURTH CAUSE OF ACTION: OBJECTION TO IDI CLAIM
**[Objection to Secured Claim - Bankruptcy Rule 3001(d)]**

74. The Debtor repeats and realleges paragraphs 1 through 73, as though set forth fully herein.

75. Bankruptcy Rule 3001(d) provides that "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." See Fed. R. Bankr. P. 3001(d).

76. The Idi Claim fails to provide any evidence showing that the claim is secured.

77. Accordingly, any portion of the Idi Claim that is deemed to be an allowed claim should be reclassified as an unsecured claim.

### AS AND FOR A FIFTH CAUSE OF ACTION: OBJECTION TO IDI CLAIM AND FIRST COUNTERCLAIM AGAINST IDI AND BLUE MOON
**[Breach of Contract]**

78. The Debtor repeats and realleges paragraphs 1 through 77, as though set forth fully herein.

79. Idi breached the Lease by failing to pay the rent.

80. Idi breached the Lease by failing to pay real estate taxes and building code violations.

81. Idi breached the Lease by failing to maintain the Hotel in good repair.

82. Accordingly, Plaintiff is entitled to judgment for unpaid rent and other expenses and for Idi's failure to properly maintain the Hotel, in an amount to be determined at trial, but believed to be in excess of $1,000,000.

### AS AND FOR A SIXTH CAUSE OF ACTION: OBJECTION TO IDI CLAIM AND SECOND COUNTERCLAIM AGAINST IDI AND BLUE MOON
**[Breach of Contract]**

83. The Debtor repeats and realleges paragraphs 1 through 82, as though set forth fully herein.

84. Pursuant to the Settlement Agreement, Idi agreed to pay $400,000 to Plaintiff, over an approximate eight-month period (the **"Settlement Payments"**).

85. The first of the Settlement Payments was due, on or before January 29, 2019, in the amount of $50,000.

86. Idi also agreed to pay $10,000 to Plaintiff for Plaintiff's reasonable legal fees.

87. Idi also agreed that, upon default of any payment, he would consent to entry of a final judgment in the amount of $745,000.

88. Idi breached the Settlement Agreement by failing to pay the required Settlement Payments in full and in a timely manner.

89. Accordingly, Plaintiff is entitled to judgment for breach of the Settlement

Agreement, in an amount to be determined at trial, but no less than $745,000.

## AS AND FOR A SEVENTH CAUSE OF ACTION: OBJECTION TO IDI CLAIM AND THIRD COUNTERCLAIM AGAINST IDI AND BLUE MOON
**[Attorney's Fees]**

90. The Debtor repeats and realleges paragraphs 1 through 89, as though set forth fully herein.

91. The Lease provides:

> If Lessee fails to perform any act or obligation required hereunder, Lessor may on 10 days' prior written notice to Lessee, perform the same for the account of Lessee, and if Lessor makes any expenditures or incurs any obligations for the payment of money in connection therewith including, but not limited to, attorneys' fees in instituting, prosecuting or defending any action or proceeding, such sums paid or obligations incurred with interest and costs shall be paid by Lessee as additional rent

92. The Memorandum Agreement provides:

> Attorneys' Fees: In the event a dispute arises under this Agreement, the prevailing party shall be entitled to recover his/ its reasonable attorneys' fees from the non-prevailing party.

93. Idi breached both the Lease and the Memorandum Agreement.

94. The Debtor is entitled to reasonable attorney's fees, in an amount to be determined at trial.

**WHEREFORE,** Plaintiff demands judgment:

(a) On the first cause of action, disallowing and expunging the Idi Claim in its entirety.

(b) On the second cause of action, disallowing and expunging the Idi Claim in its entirety.

(c) On the third cause of action, disallowing and expunging the Idi Claim in its entirety.

(d) On the fourth cause of action, reclassifying any allowed portion of the Idi Claim as an unsecured claim.

(e) On the fifth cause of action, for judgment against Defendants in an amount to be determined at trial, but believed to be in excess of $1,000,000.

   (f) On the sixth cause of action, for judgment against Defendants in an amount to be determined at trial, but no less than $745,000.

   (g) On the seventh cause of action, for judgment against Defendants for attorney's fees, in an amount to be determined at trial;

   (h) Together with interest, costs, and attorney's fees allowed by law.

Dated: New York, New York
   January 31, 2023

          **TARTER KRINSKY & DROGIN LLP**

          By: /s/ David H. Wander
            David H. Wander
            Scott Markowitz
            Alexander R. Tiktin
          1350 Broadway
          New York, NY 10018
          212-216-8000
          dwander@tarterkrinsky.com)
          atiktin@tarterkrinsky.com)
          *Attorneys for the Debtor and Debtor-in-Possession*